## AMERICAN SMELTING & REFINING CO. v. UNION PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. March 13, 1919. Rehearing Denied May 21, 1919.)

### No. 5194.

1. RAILROADS ⚖➙133(1)—LEASE OF LAND—CONSTRUCTION—PRACTICAL CONSTRUCTION BY PARTIES.

In a lease of land by a railroad company to a smelting company as site for a plant, reserving to lessor all tracks thereon, a provision by which lessor agreed to furnish material and lay all further tracks required by lessee, "and do all switching of its cars within its premises necessary in placing the same for loading and unloading freight or material therefor free of charge to said smelting company," *held* not to limit such free switching service to that of cars for actual load hauls from or to the plant, especially in view of a contrary practical construction by the parties during 30 years.

2. CARRIERS ⚖➙32(2)—INTERSTATE COMMERCE ACT—REBATES.

A provision in a lease of land by an interstate railroad company for a smelter plant site, by which in consideration of the rental, etc., it agreed

---

to do intraplant switching of cars, wholly disconnected from their transportation over its road, free of charge, *held* not invalid as a device to cover the giving of rebates.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by the Union Pacific Railroad Company against the American Smelting & Refining Company. Judgment for plaintiff, and defendant brings error. Reversed.

F. W. Lehmann, of St. Louis, Mo. (Crofoot, Scott & Fraser, of Omaha, Neb., on the brief), for plaintiff in error.

N. H. Loomis, of Omaha, Neb. (Edson Rich and C. B. Matthai, both of Omaha, Neb., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. The railway company, hereinafter called plaintiff, sued the smelting company, hereinafter called defendant, to recover the reasonable value of a so-called intraplant switching service performed by the plaintiff for defendant since July 26, 1912. The defendant answered the complaint, and the plaintiff filed a general demurrer to the answer.

A stipulation was filed waiving a jury and fixing the reasonable value of the services performed at $7,129.44, in case the court should decide the defendant to be liable. On the pleadings and the stipulation the case was submitted. The court found for the plaintiff and rendered judgment for the amount stipulated. The defendant assigns such ruling as error.

[1] So far as material to the questions raised, the complaint alleged the following facts:

"That at all the times mentioned herein plaintiff was engaged in the operation of certain lines of railroad extending from Council Bluffs, Iowa, and Kansas City, Mo., through the states of Nebraska, Kansas, Colorado, and Wyoming, to Ogden, Utah, and engaged as a common carrier in the interstate transportation of freight and passengers over said railroad lines.

"That at all the times mentioned herein defendant was engaged in the operation of a smelting plant located in the city of Omaha, Neb., occupying grounds of the extent of approximately 19 acres, connected by spur and switch tracks with the main tracks of plaintiff's railroad line through said city of Omaha, and having within said plant grounds railroad tracks connecting the various buildings and other parts of said plant as means and facilities for the convenient and economical handling of ore, bullion, coal, and other materials from point to point within said plant in the operation thereof.

"That in the prosecution of its said business defendant was at all the times mentioned herein, a large shipper of freight in interstate commerce over the railroad lines of plaintiff, shipping ore and other materials to said Omaha plant from points in states other than Nebraska, and shipping from said Omaha plant the products thereof to points in states other than Nebraska, and that defendant has paid for all said interstate transportation performed for it by the plaintiff the rates prescribed therefor by the tariffs published by the plaintiff and filed with the Interstate Commerce Commission.

"That at the special instance and request of defendant the plaintiff has continuously from the 26th day of July, 1912, to the 30th day of June, 1916, inclusive, rendered and performed for defendant certain work, labor, and services (hereinafter referred to as 'intraplant switching service') consisting of

the switching and movement of cars, both loaded and empty, by means of a switch engine furnished and operated by plaintiff and the labor of an engine crew and yard crew furnished by plaintiff, from point to point within the grounds occupied by said Omaha plant of defendant, as directed by agents of defendant, over the trackage facilities maintained as aforesaid within said plant grounds; said switching and movement of cars being separate and apart from, and in addition to, any services rendered by plaintiff in and about the delivery to or acceptance from said plant of loaded cars in connection with and as a part of the transportation thereof from or to points beyond the plant limits or in and about the delivery to said plant of empty cars for loading or the removal therefrom of empty cars after unloading in connection with transportation to and from said plant.

"That the plaintiff published tariffs or rates and charges applicable to the transportation mentioned in the foregoing paragraph 6 hereof which contained no provisions concerning the aforesaid intraplant switching service, and no tariff published by the plaintiff and on file either with the Interstate Commerce Commission or with the Nebraska State Railway Commission during the times mentioned herein contained any provision concerning said intraplant switching service."

Without setting forth the allegations of the answer, it is sufficient to say that it alleged that the services, the value of which were sued for, were performed by the plaintiff under and pursuant to the terms of a lease entered into between the parties April 23, 1912, a copy of said lease being attached to the answer as an exhibit. By the terms of the lease the plaintiff, "for and in consideration of the covenants and agreements of the smelting company hereinafter written, as well as of the mutual covenants and agreements herein contained" (section 1, art. 2), leased to the defendant a tract of land in the city of Omaha, Neb., containing about 19 acres,

"excepting and reserving to the said Pacific Company the exclusive ownership, possession, right of possession and right to the exclusive use of all of the railroad tracks, side tracks and switches now upon, or which may hereafter, at any time during the term of this lease, be constructed in or upon the said premises, or any part thereof, the said premises and said tracks being further shown and described upon the map hereto annexed, marked Exhibit A and made a part hereof, and excepting and reserving further the exclusive right to said Pacific Company to lay down and construct, and thereafter maintain and operate any additional railroad tracks, side tracks and switch connections within and upon said premises, which the said smelting company may require to be laid or constructed for the hauling of its freight or material in the prosecution of the said business of the said smelting company upon the said premises.

"To have and to hold the same unto the said smelting company for the said term [January 1, 1937] for the purpose of maintaining and operating thereon its buildings and appliances now situated thereon, and any other such buildings and appliances as it may, during the term hereby created, erect thereon, and of conducting thereon the business of handling, smelting and refining ores, and doing such other business pertaining to or connected with the handling, smelting and refining of ores as said smelting company may, during the said term, engage in upon said premises."

Section 2, art. 2, of the lease, reads as follows:

"And for the consideration aforesaid the said Pacific Company covenants and agrees to furnish all material for and to lay upon the grading therefor, as hereinafter set forth, all necessary tracks over and upon said premises, which the said smelting company may require to be laid for the handling of its freight and material in the prosecution of its business and do all switching of its cars within its premises necessary in placing the same for loading and

unloading freight or material therefor free of charge to said smelting company."

The lease also provided that in consideration of the covenants and agreements thereinbefore mentioned on the part of the plaintiff, the defendant would pay the plaintiff, as compensation in respect of its said covenants, an annual rental in the sum of $5,000 until January 1, 1925; after January 1, 1925, to January 1, 1928, $6,000; after January 1, 1928, to January 1, 1931, $7,000; after January 31, 1931, to January 1, 1934, $8,000; after January 31, 1934, to January 1, 1937, $9,000. The record also shows that a similar lease so far as the questions now under consideration are concerned, had existed between the parties and their predecessors since April 23, 1886, and no charge had ever been made by the lessors for the intraplant switching service until the present suit was brought.

The plaintiff first contends that section 2, art. 2, above quoted, relates to the original construction of the tracks and the handling of freight and material incidental thereto, or, if this position is untenable, that the switching service must be limited to the switching of cars to actual road hauls; that is, the placing of cars for loading and unloading in connection with shipments beyond the plant. It is conceded that for 30 years, the parties have placed a different construction upon said section; but it is urged that such construction can have no weight because the section is unambiguous. Learned counsel, however, differ about its construction, and it is undoubtedly the cause of this lawsuit. We do not think it is unambiguous to the extent of excluding from our consideration the construction that the parties have placed upon the section during a period of 30 years.

But let us consider the section independent of the acts of the parties under the lease. Section 2, art. 3, of the lease provides that the defendant will pay the cost and expense incurred for the doing of the grading, for the construction of any additional tracks, side tracks, switches, or other railroad betterments in and upon the leased premises, the construction and operation of which may, at any time, be required by it from the plaintiff. By section 1, art. 2, such tracks, betterments and switches were to be and remain the property of the plaintiff. By section 2, art. 2, the plaintiff agreed to furnish all material for and to lay upon the grading above mentioned all necessary tracks over and upon said premises which the defendant might require to be laid for the handling of its freight and material in the prosecution of its business and do all switching of its cars within its premises, necessary in placing the same for loading and unloading freight or material therefor free of charge to the defendant. The furnishing of material, laying of all necessary tracks, and the switching service was to be performed for the "consideration aforesaid." Section 2, art. 2. The consideration thus referred to, is that mentioned in section 1, art. 2, above quoted, namely:

"The covenants and agreements of the smelting company hereinafter written, as well as of the mutual covenants and agreements herein contained."

The words "free of charge" simply were added, in our opinion, to place beyond controversy the fact that the services mentioned were to

be without charge other than that specified in the covenants and agreements of the parties. We see no reason to limit the switching service to that required in the original construction of the tracks, as the plaintiff had agreed to furnish the material and lay the tracks and this would include such switching service as should be necessary to furnish the material and lay the tracks. Therefore the plaintiff having agreed to furnish the material and lay the tracks it would not have been necessary to again provide that the plaintiff should do the switching in connection with the laying of the tracks so we conclude the language in regard to switching cannot be confined to the switching required in the original laying of the tracks. Neither do we see any reason for limiting the switching service to the switching of cars for actual load hauls from or to the plant.

We take it that the plaintiff, under the facts disclosed in the record, would deliver to and accept from the defendant loaded cars, and place empty cars for loading, in connection with and as a part of the transportation thereof from or to points beyond the plant limits, without other charge than that embraced in its published tariff. If this be so, it was unnecessary to provide in the lease for that switching service; moreover, the allegations of the plaintiff's complaint absolutely exclude the service in question from any connection with transportation to and from the plant of the defendant in interstate commerce.

[2] We therefore are of the opinion assisted by the practical construction of the parties that section 2, art. 2, cannot be limited as the plaintiff seeks to limit it. The next contention of the plaintiff is that if the switching service, the value of which is sued for, is a service for which the covenants and agreements of the lease are the consideration, then the switching provision of the lease amounts to a device to conceal a rebate or concession and in this respect is void under section 2 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [Comp. St. § 8564]) and section 1 of the Elkins Act (Act Feb. 19, 1903, c. 708, 32 Stat. 847, as amended by Act June 29, 1906, c. 3591, 34 Stat. 587 [Comp. St. § 8597]).

Of course an unlawful rebate or concession is just as much a rebate or concession whether covered or uncovered. It is more difficult to find, if covered. This is the only difference. We do not think the parties to the lease, if the provision in regard to the switching service is an unlawful rebate, intended to cover it, for instead of stopping where they well might have stopped, they proceeded to state just what the fact was. The question then before us is: Does section 2, art. 2, amount to an unlawful rebate or concession? In the consideration of this question it is apparent that this case is much different from those cases where unlawful rebates or concessions are usually considered. It lacks the presence of a competitive shipper complaining of discrimination, or the United States moving at the request of the Interstate Commerce Commission. The complaint of the plaintiff in paragraph 7 of the complaint also alleges:

"Said switching and movement of cars being separate and apart from, and in addition to, any services rendered by plaintiff in and about the delivery to or acceptance from said plant of loaded cars in connection with and

as a part of the transportation thereof from or to points beyond the plant limits or in and about the delivery to said plant of empty cars for loading or the removal therefrom of empty cars after unloading in connection with transportation to and from said plant."

By this allegation of the plaintiff, the switching service in question has no relation to or connection with transportation of passengers or property in interstate commerce and therefore in no view of the case could the provision in regard to the switching service be affected by the act to regulate commerce and the amendments thereto.

With reference to section 2 of the Interstate Commerce Act and section 1 of the Elkins Act, there is no evidence that the plaintiff, by performing the switching service in question, according to the terms of the lease, charges, demands, collects, or receives from the defendant a greater or less compensation for the transportation of passengers or property subject to the provisions of the act to regulate commerce, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions. Nor is there any evidence that, by the performance of the switching service in question, the plaintiff offers, grants, or gives any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce, by it, whereby any such property is transported at a less rate than that named in its tariffs published and filed, or whereby any such other advantage is given or discrimination practiced in the transportation of property in interstate commerce.

The switching service in question is performed wholly within the state of Nebraska, and so far as this record is concerned is not connected with interstate commerce at all. Therefore the Interstate Commerce Act and its amendments are not applicable to it. We do not say that this lease between the plaintiff and the defendant may not, in a proper case, be shown to be an unlawful concession or rebate; all we say is that it is not shown in this case.

We are not unmindful that, although published rates may be collected on shipments transported, concessions and offsets may be extended by the carriers or the interests who control the carriers to favored shippers. These concessions and offsets are as pernicious as direct rebates, and it matters little whether they are in the form of cash payments, interest charges, royalty earnings, the use of valuable property at an inadequate rent, the free use of the carrier's funds or credit, or other insidious means, if they confer concessions and advantages which place certain shippers in a position of preference and advantage over competitors who are also customers of these carriers. Rates for Transportation of Anthracite Coal, 35 Interst. Com. Com'n R. 239. No competitor customer appears in this suit. It is true the Elkins Act aims to prohibit, not only discrimination between shippers, but any departure from the tariff rates published irrespective of its actual discriminatory effect. Vandalia R. Co. v. United States, 226 Fed. 713, 141 C. C. A. 469. But these tariff rates must be rates prescribed for the transportation of property or passengers in interstate commerce.

We may not stop to review the cases cited by counsel for plaintiff in support of the contention now under consideration. They have all been examined, and in every instance they present a case where a common carrier subject to the act to regulate commerce has done some act whereby the transportation of property or passengers in interstate commerce has violated the Interstate Commerce Act. The cases cited are Chicago & Alton Ry. Co. v. United States, 212 U. S. 563, 29 Sup. Ct. 689, 53 L. Ed. 653; Wight v. United States, 167 U. S. 512, 17 Sup. Ct. 822, 42 L. Ed. 258; Chicago & Alton R. R. Co. v. Kirby, 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; United States v. Union Stockyard Co. of Chicago, 226 U. S. 286, 33 Sup. Ct. 83, 57 L. Ed. 226; Phillips Co. v. Grand Trunk Western R. R. Co., 236 U. S. 667, 35 Sup. Ct. 444, 59 L. Ed. 774; Indianapolis Freight Bureau v. C., C., C. & St. L. Ry. Co., 16 Interst. Com. Com'n R. 254, 260; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310; Moshassuck Valley Railroad, Second Industrial Railways Case, 37 Interst. Com. Com'n R. 566; Vandalia Ry. Co. v. United States, 226 Fed. 713, 141 C. C. A. 469.

Counsel for the plaintiff next contends that the switching service in controversy, while not a common carrier service in the ordinary acceptation of the word, is a special or independent service necessarily rendered by the same crews and equipment as the common carrier switching and is paid from out of operating revenue for which a reasonable charge must be made by the carrier. But here again we are met by the fact that the switching service, so far as the record before us is concerned is separate and apart from any service performed by the plaintiff in interstate commerce.

If this case was before the commission on an application to advance rates, or on the complaint of some shipper that the rates charged by the plaintiff were unreasonable, and it became material to inquire as to the sources of revenue of the plaintiff and the cost of the operation of its business, and the commission found that the service was without charge, it might say, as it often has said, You must make a charge for this service and publish it in your tariffs. But we have no authority to enter into such a discussion and there is no such case before us. We cannot find that the service is without charge when the whole lease is considered.

So far as the record before us is concerned, the subject-matter of the switching service was within the competency of both parties to make and is valid.

The judgment below is therefore reversed, and the case remanded, with instructions to dismiss the complaint.