## OREGON SHORT LINE R. CO. v. AMERICAN SMELTING & REFINING CO.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1920.)

No. 5546.

Carriers ☞35—Cannot recover for switching done under agreement alleged to be illegal as rebate, in violation of Interstate Commerce Acts.

An interstate railroad company cannot recover for switching done in the yards of a smelter plant, under an agreement and understanding that, as provided in its tariff schedules duly published and filed with the Interstate Commerce Commission, such switching was a part of the transportation and should be free, as absorbed in freight charges, on an allegation that such provision of its tariff schedules was illegal and void, as in effect granting a rebate, in violation of the Interstate Commerce Acts.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action at law by the Oregon Short Line Railroad Company against the American Smelting & Refining Company. Judgment for defendant, and plaintiff brings error. Affirmed.

George H. Smith, of Salt Lake City, Utah (J. V. Lyle and R. B. Porter, both of Salt Lake City, Utah, on the brief), for plaintiff in error.

F. W. Lehmann, of St. Louis, Mo. (E. M. Bagley, of Salt Lake City, Utah, on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. Plaintiff in error, hereafter plaintiff, brought this action against defendant in error, hereafter defendant, to recover the reasonable value of work, labor, and services performed for the defendant at its request in the switching and movement of cars. A jury was waived in writing, and the action tried by the court upon the pleadings and certain stipulated facts. The trial resulted in a judgment of dismissal of plaintiff's cause of action, and it brings the case here on writ of error. The material facts are as follows:

The complaint alleged that plaintiff was a corporation of Utah, and the defendant of New Jersey; that plaintiff at all times mentioned in the complaint was engaged in the operation of a line of railroad extending from Huntington, Or., through the state of Idaho, to Salt Lake City, Utah, and thence to and beyond Murray, Utah, and also of lines of railroads connecting with the line aforesaid extending into the states of Wyoming and Montana, and that it was a common carrier in the interstate transportation of freight and passengers over said line; that the defendant was engaged in the operation of a smelting plant and reduction works at said Murray, Utah, and occupied for said purpose approximately 128 acres of land; that said plant was connected by spur and switching tracks with the railroad operated by plaintiff; that defendant maintained within its said plant grounds a system of railroad tracks and switches connecting the various buildings and other parts of said plant designed and used as means and facilities for the convenient and economical transportation from point to point within said plant of coal, ore, and other materials used in the operation of said plant; that defendant was a shipper over plaintiff's railroad of large quantities of ore, coal, and other materials from points outside the state of Utah to its said plant, and also a shipper over said railroad of large quantities of the products of said plant from said plant to points outside the state of Utah; that defendant had paid for all interstate transportation the rates prescribed therefor by the tariffs published by the plaintiff; that between December 1, 1912, and October 31, 1916, both inclusive, plaintiff at the request of defendant performed intra-plant switching services for said defendant in the said intra-plant yard of the defendant, consisting of the switching and movement of cars, both loaded and empty, by means of a switch engine furnished and operated by plaintiff and the labor of an engine crew and yard crew furnished by plaintiff, from point to point within the said plant as directed by the agents of defendant, and over the trackage facilities constituting said intra-plant yard, said switching and movement of cars being separate and apart from and in addition to any services rendered by plaintiff in and about the delivery to or acceptance from said plant of loaded cars in connection with and as a part of the transportation from or to points beyond the plant's limits, and separate and apart from and in addition to the delivery to the said plant of empty cars for loading or the removal from said plant of said empty cars after unloading in connection with transportation to or from said plant; that the reasonable value of the aforesaid intra-plant switching service was

$60,378.71. For the purpose of this opinion it is not deemed necessary to mention the allegations of the complaint in regard to other lines of railroad.

The defendant by its answer admitted the performance of the services mentioned in the complaint and that the reasonable value was as stated. It then pleaded, among other defenses, the following:

"That at all the times mentioned in the complaint the said plaintiff * * * had adopted and published regular switching tariffs covering switching rates and absorptions at points on their lines and at Murray in the state of Utah, and the same had been duly filed and were at all times on file with the Interstate Commerce Commission of the United States, and had been and were approved by said commission, and by said tariffs it was provided that all movements 'from track to track within smelter plants' should be free; and defendant alleges that all the services mentioned in the petition, and for which compensation is claimed, were movements of cars of the kind mentioned in the said tariffs so adopted, published, approved, and filed as aforesaid—that is to say, of cars containing freight which had paid transportation charges to the plant, and plaintiff and its assignors have no right to further compensation for said service."

The plaintiff in its reply admitted:

"That during all of the times mentioned in the complaint herein the tariff schedules of the plaintiff and of each of the other railroads mentioned, all of which were established and posted according to law and filed with the Interstate Commerce Commission as required by the Act to Regulate Commerce of February 4, 1887, and the acts amendatory thereof and supplemental thereto, provided in substance and effect that switching from track to track within the smelter plant of the defendant of cars containing freight on which transportation charges had been paid to the plant over the line of the plaintiff or the other railroads hereinabove mentioned would be performed free of any other charge"

—and alleged as follows:

Paragraph VI: "As a further reply to the amended answer of the defendant herein, this plaintiff alleges that if any agreement, understanding, or practice, such as alleged by defendant in its answer, existed or obtained respecting said tracks and facilities, or the use thereof, or the compensation for the use thereof, by which the service for which compensation is sought in this action was to be performed without other or different compensation than the alleged use of said tracks and facilities, or without additional payment therefor over and above the charge for the line haul on shipments to the smelting plant, said agreement, practice, and understanding was during all the times mentioned in this action, and still is, void, invalid, and of no force or effect, and against public policy, by reason of the terms and provisions of the act of Congress of the United States regulating interstate and foreign commerce, approved February 4, 1887, and the acts amendatory thereof and supplemental thereto, commonly called the Interstate Commerce Act [34 Stat. 584], and particularly sections 2 and 3 of the Hepburn Act, amending said Interstate Commerce Act, and section 1 of the Elkins Act, amending said Interstate Commerce Act."

Paragraphs VII and X of the agreed statement of facts are as follows:

Paragraph VII: "That during the entire period from December 1, 1912, to October 31, 1916, the plaintiff and each of its assignors duly certified and posted, according to law, and duly filed with the Interstate Commerce Commission of the United States, switching tariff schedules which provided, among other things, that switching movements from track to track within the American Smelting & Refining Company's plant at Murray, Utah, of cars

containing freight which had paid transportation charges to said plant, should be free; that the same provision for free switching at said plant had been carried in the published and filed switching tariffs of the plaintiff ever since on or about May 23, 1908, on intrastate traffic, and on or about June 27, 1908, on interstate traffic, and continued in effect in subsequent issues thereof until the institution of this suit."

Paragraph X: "That for such intra-plant service as described in paragraph IX defendant made no payment, save as payment was made by paying the transportation charges on the freight to the plant, and no payment was ever demanded for such service by plaintiff until just before this suit was brought; said service being dealt with by both parties as provided for in said switching tariff and being 'switching from track to track within smelter plants, served by Oregon Short Line Railroad of cars containing freight which has paid transportation charges to plant.' Such switching movements within the plant were made from time to time and place to place as directed and requested by defendant."

It appears from the foregoing statement that plaintiff stated a prima facie case without reference to an unlawful rebate, but when the defendant pleaded that by the duly published and filed tariff schedules of plaintiff the intra-plant services performed by plaintiff as alleged were to be free, the defendant was compelled to and did plead that the provision in the tariff of plaintiff that the intra-plant switching services should be free was void as being in violation of sections 2 and 3 of the Hepburn Act (Comp. St. §§ 8597, 8582) and section 1 of the Elkins Act (Comp. St. § 8597). Paragraph X of the agreed statement of facts also states:

"Said service being dealt with by both parties as provided for in said switching tariff."

It therefore appears that it was the understanding and agreement of the parties that the intra-plant switching service should be free. Plaintiff, therefore, is in this position. If the free switching agreement was valid, it cannot recover; if it was void, as being in violation of the laws above mentioned, as plaintiff contends, then it cannot recover for services performed pursuant to such an agreement. Plaintiff made out a prima facie case when the defendant admitted the allegations of its complaint. Defendant by the agreed statement of facts established the understanding and agreement of the parties and the plaintiff's tariff schedule. These facts answered completely the plaintiff's prima facie case. Up to this point no illegality in the transaction had been suggested. On the evidence defendant was entitled to judgment. To meet this situation plaintiff contended, in accordance with the allegation of its reply, that the agreement as to free switching constituted an unlawful rebate under the sections of the Interstate Commerce Law above mentioned, and for the first time this question was brought into the controversy. The plaintiff was obliged, therefore, to rely on the unlawful agreement just the same as if it had pleaded it in the first instance. Mathews v. Wayne Junction Trust Co. (D. C.) 197 Fed. 237.

It is elementary that a party to an illegal contract cannot set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. This rule is the same in law or equity, and applies to contracts, whether executed or executory. 13 C. J.

493, 494, 495. If the contention of the plaintiff is true, both the plaintiff and defendant were guilty of a misdemeanor punishable by a fine of not less than $1,000 nor more than $20,000, and their officers, in addition to the fine, to imprisonment not exceeding two years, in the discretion of the court. The plaintiff and defendant are in pari delicto, and the law will leave them where it finds them. 13 C. J. supra. In Higgins et al. v. McCrea, 116 U. S. 671, 6 Sup. Ct. 557, 29 L. Ed. 764, it appears that the plaintiffs in error brought a suit in the Circuit Court for the Northern District of Ohio to recover $31,644.31 from McCrea for moneys paid by them, as they alleged, in executing the orders of McCrea, for the purchase of certain lots of pork and lard in the exchange of the Chicago Board of Trade. McCrea pleaded as a defense that the plaintiffs in error were engaged in carrying on for themselves and others gambling transactions in pork and lard and other commodities on said Board. McCrea also set up a counterclaim for the amount of $19,895, which plaintiffs in error had required him from time to time to pay, and which he had paid into their hands, in order to promote and carry on such gambling transactions. The Supreme Court in this case decided that McCrea could not recover, saying:

"We do not see on what ground a party, who says in his pleading that the money which he seeks to recover was paid out for the accomplishment of a purpose made an offense by the law, and who testifies and insists to the end of his suit that the contract on which he advanced his money was illegal, criminal, and void, can recover it back in a court whose duty it is to give effect to the law which the party admits he intended to violate."

We regard the performance of the services for which plaintiff claims judgment in the present case the same as if it had paid the defendant the value of these services in cash and was seeking to recover it back. In Holman v. Johnson, Cowper, 341, 343, it was stated by Lord Mansfield that:

"The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: Ex dolo malo non oritur actio. No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground that the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it; for, where both are equally in fault, potior est conditio defendentis."

The language used by Lord Mansfield and the Supreme Court in the cases cited was approved in White v. Barber, 123 U. S. 392, 8 Sup. Ct. 221, 31 L. Ed. 243. We know of no statute which would allow the plaintiff to recover under the facts in this case, nor does the case come within any exception to the general rule. It is not a case where the carrier is suing to recover the full tariff rate, which by inad-

vertence or mistake had not been paid on some shipment. The parties were bound to know the law, and if plaintiff's contention is true they entered into a contract in direct violation of it. The case of A. S. & R. Co. v. Union Pacific, 256 Fed. 737, 168 C. C. A. 83, was a somewhat similar case against defendant. In that case we decided that there could be no recovery by the Union Pacific, for the reason that the evidence did not show the transaction in that case to have been an unlawful rebate. It is claimed, however, that the facts in this case are much stronger, and do show that the transaction in this case constituted an unlawful rebate. We find it unnecessary to determine whether the transaction constituted a rebate or not, as the plaintiff can-, not recover, in our opinion, whichever way we might find on that question. If the contract was valid, the plaintiff could not recover; and if it was a rebate, and invalid, it cannot recover for the reasons stated.

Judgment below affirmed.

MUNGER, District Judge, concurs in result.