GRAND TRUNK WESTERN R. CO. *v.* MOUNT CLEMENS
SUGAR CO.

1. CARRIERS—INTRA-PLANT SWITCHING—PRIVATE CONTRACT.
   Intra-plant switching operations at sugar beet factory, as opera-
   tion of plant required, such as spotting cars at unloading docks
   and bins and loading places, moving cars from place to place
   at the plant and moving a clamshell about, *held*, no duty of
   common carrier, nor a part of ''transportation,'' but a sub-
   ject of private contract.

2. SAME—TARIFFS—ENGINE HIRE CONTRACTS.
   Whether the services contemplated in an engine hire agreement
   between shipper and common carrier are identical with those
   covered by the tariffs is a question of specific fact, not a mere
   matter of resemblance.

3. SAME—LINE HAUL AND SWITCHING TARIFFS—SHIPPERS.
   Line haul and switching tariffs cover the usual and ordinary
   services of a common carrier which has regard for its own cost
   and convenience and for needs of other shippers.

4. SAME—SPOTTING CARS—INTRA-PLANT MOVEMENT OF CARS.
   A common carrier owes no duty to spot cars solely at the ship-
   per's convenience, nor does a published switching tariff oblige
   it to conduct intra-plant movements of cars to the sole end of
   efficient operation of the plant.

5. SAME—ENGINE HIRE CONTRACT—SHIPPER'S CONTROL—TARIFFS.
   Engine hire agreement between common carrier and shipper un-
   der which carrier placed engine and full crew under control of
   shipper for use in hauling and spotting cars, intra-plant
   switching service and movement of clamshell and which en-
   abled shipper to direct them at its own convenience for efficient
   conduct of its plant and without delays and uncertainty inci-
   dent to ordinary traffic operation *held*, to provide for shipper
   a special and superior service not contemplated by line haul
   and switching tariffs (2 Comp. Laws 1929, § 11035).

6. TRIAL—REOPENING OF CASE—PLEADING—EVIDENCE—COURT RULES.

In railroad's action against shipper for car demurrage charges, claimed under verified bill of particulars, reopening of case on plaintiff's motion to take further testimony on demurrage *held*, not an abuse of discretion, where, after holding at hearing that pleadings constituted a *prima facie* showing of the facts of plaintiff's case, trial court filed opinion holding defendant's answer sufficient, under the court rule, to put plaintiff to its proof (Court Rule No. 20, § 5 [1933]).

7. CARRIERS—DEMURRAGE—DAMAGES—ELECTION.

In carrier's action against shipper for car demurrage charges, refusal of court to require plaintiff to elect one of several rules for computing demurrage *held*, not error since plaintiff, having shown the facts, was entitled to rule of damages which fits them, and, court adopted rule most favorable to defendant.

8. APPEAL AND ERROR—EVIDENCE—ASSIGNMENT OF ERROR.

Judgment for carrier in action of assumpsit against shipper for car demurrage damages is affirmed, where there was evidence in support of such claimed damages, no error was assigned that the judgment was not so supported by testimony nor that it was against the preponderance or weight of the evidence, no other computation attempted to show error now claimed nor true amount due, and defendant's records were not produced to show the facts.

Appeal from Macomb; Pugsley (Earl C.), J., presiding. Submitted June 2, 1936. (Docket No. 22, Calendar No. 38,795.) Decided October 5, 1936. Rehearing denied November 9, 1936. Petition to Supreme Court of United States for writ of certiorari denied March 8, 1937. See 300 U. S. — (57 Sup. Ct. 514).

Assumpsit by Grand Trunk Western Railroad Company against Mount Clemens Sugar Company, a Michigan corporation, for car demurrage. Counter-claim by defendant against plaintiff for money paid under an engine hire agreement. From judgment for plaintiff, defendant appeals. Affirmed.

*H. V. Spike* and *F. V. Slocum* (*Stone & Matthews,* of counsel), for plaintiff.

*Lungerhausen, Weeks, Lungerhausen & French*
(*Leo J. Carrigan,* of counsel), for defendant.

FEAD, J. Plaintiff had judgment for car demurrage. Defendant was denied recovery for money it had paid plaintiff under engine hire agreements, with claim of damage doubled under 2 Comp. Laws 1929, § 11035.

For many years defendant has operated a sugar beet factory near Mount Clemens. Its plant is. about two miles from the main line of plaintiff's railroad and is reached by a single spur track, from which run a number of stub tracks to defendant's loading and unloading docks and bins.

The sugar manufacturing "campaign" lasts about three months from October 1st. During the campaign some 1,200 to 1,500 cars of beets are received by defendant, sometimes 100 in a day. The rest of the year is quiescent. It is conceded that both intrastate and interstate commerce is involved in the action.

For some 20 years the parties have made an engine hire contract annually for the campaign. The agreement recites that "the Grand Trunk as a common carrier, serves the plant of the Sugar Company;" that "in the successful operation of its plant, the Sugar Company requires considerable service of a locomotive engine and full crew and desires that the Grand Trunk furnish the same;" and provides that the Grand Trunk agrees to furnish its engine and crew "for the purpose of performing switching service for the Sugar Company" for a period of not more than 12 hours per day; the crew to work on Sundays if requested by defendant; the engine to tie up at the defendant's plant each night; the crew to be considered employees of the

Grand Trunk and subject to its rules and regulations "when performing said switching service for the Sugar Company;" the Grand Trunk to fuel and oil the engine and pay the crew; the Sugar Company to indemnify the Grand Trunk from damages, etc., arising out of the performance of the contract or condition of the track, etc.; defendant to pay the sum of $8 per hour, with a minimum of $48 per day; the contract to run for five months, with right of defendant to terminate it upon 60 hours' notice.

The engine was employed in hauling cars from the main line, spotting them at the unloading docks and bins and the loading places, hauling out empties and loaded cars, switching cars from place to place at the plant for loading or unloading, moving a clamshell about, and was sometimes idle. In other words, cars were moved as the operations required. Defendant gave few directions to the crew but that it had the contract right to control the car movements at the plant cannot be doubted.

The usual place of delivery was at the unloading bins or docks at defendant's plant. Plaintiff had a published switching tariff of $3.15 per car movement.

Defendant's contention is that, as spotting the cars at the docks or bins is covered by the line haul tariff and the intra-plant movements by the switching tariff and no other service was contemplated by the engine hire agreement, the contract was in violation of the Federal and State commerce acts, consequently was illegal for want of consideration and the money paid thereunder may be recovered with the statutory penalty.

Defendant relies largely on *Chesapeake & Ohio R. Co. v. Westinghouse, Church, Kerr & Co., Inc.,* 270 U. S. 260 (46 Sup. Ct. 220), where the court held

illegal, as without consideration and as affording an undue preference, an engine hire agreement which, however, so far as the opinion shows, was designed only to complete the delivery which the carrier had contracted to make and which was included in its haul tariff.

This case presents the additional and different factor of intra-plant switching, which is no duty of a common carrier, is not a part of "transportation," *Terminal Allowance for Switching at Humboldt, Kan.*, 192 I. C. C. 67, 70, and is the subject of private contract, *Grasselli Chemical Co.* v. *Director General*, 81 I. C. C. 562, *American Smelting & Refining Co.* v. *Railroad Co.*, 168 C. C. A. 83 (256 Fed. 737).

Whether the services contemplated in the engine hire agreement were identical with those covered by the tariffs is a question of specific fact, not a mere matter of resemblance. The tariffs cover the usual and ordinary services of a carrier, which has some regard for its own cost and convenience and must have regard for the needs of other shippers. The carrier owes no legal duty to spot cars solely at the shipper's convenience, nor does a published switching tariff obligate it to conduct intra-plant movements of cars to the sole end of efficient operation of the plant. *Timken Roller Bearing Company Terminal Allowance*, 209 I. C. C. 441.

The engine hire agreement at bar provided for defendant a special and superior service not contemplated by the tariff, which placed engine movements under control of defendant and enabled it to direct them at its own convenience and to the efficient and profitable conduct of its plant, without the delays and uncertainty incident to ordinary traffic operation. In effect, it converted the local situation from one of railroading to one of plant operation.

*Practices of Carriers Affecting Operating Revenues
or Expenses—Terminal Services,* 209 I. C. C. 11.
The distinction is recognized, by way of contrast, in
the *Chesapeake Case,* p. 266:

"The service by special engine and crew con-
tracted for and given was not spotting solely for the
convenience of the shipper. It was the spotting serv-
ice covered by the tariff."

Defendant argues at length that cases covering
"interchange yards or tracks" are not in point.

We need not discuss this contention because the
essential question is one of character of the service
covered by the contract. In our opinion, the con-
tract provided for a service not covered by plain-
tiff's duty as a common carrier, *Sasinowski* v. *Rail-
road Co.,* (C. C. A.) 74 Fed. (2d) 628; *Pennsylvania
R. Co.* v. *M. McGirr's Sons Co.,* (C. C. A.) 287 Fed.
334; *Grasselli Chemical Co.* v. *Director General,
supra; Practices of Carriers Affecting Operating
Revenues and Expenses — Terminal Operations,
supra.* Defendant's counter-claim for return of rent
paid was properly disallowed.

Defendant also challenges the judgment for de-
murrage.

Plaintiff filed bill of particulars of the demurrage,
verified by oath. At the hearing, the court held the
pleadings sufficient, under Court Rule No. 20, § 5, to
constitute a *prima facie* showing of the facts of
plaintiff's case. In opinion at the close of hearing,
however, the court, after closer inspection of the
pleadings, held defendant's answer sufficient under
the rule to put plaintiff to its proof. On motion of
plaintiff, the court reopened the case and took testi-
mony on demurrage. Defendant contends this was
an abuse of discretion. We think the court decently
could not have done otherwise.

Plaintiff claimed demurrage under an "average agreement" and the court computed it in accordance with section D of rule 3 of the demurrage tariff, which covers cases where the industry does not do its own switching. Section E of rule 3 applies to industries doing their own switching. Rule 7 applies to cases not subject to an average agreement. Plaintiff claimed under all or the applicable rule. Defendant alleges as error that the court refused to compel plaintiff to elect the rule of computation but it cites no authority for its contention and we know of no rule which requires such election. Having shown the facts, plaintiff was entitled to the rule of damages which fits them. Nor was defendant injured because the court adopted the rule most favorable to it.

Defendant also complains that the testimony does not support the award of demurrage damages. It did not assign as error that the judgment was not supported by testimony nor against the preponderance or weight of the evidence nor did counsel attempt a computation which would indicate the specific error claimed nor the true amount due. Nor did defendant produce its records to show the facts. It is sufficient to say that there was testimony supporting the verdict.

Judgment affirmed, with costs.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.